## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

WALTER ESCOBAR (#589062)                                    CIVIL ACTION

VERSUS

PAUL HALL, WARDEN                                    NO. 13-0143-SDD-RLB

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The State has filed oppositions to the petitioner's application, as supplemented, and the petitioner has filed responses thereto.  There is no need for oral argument or for an evidentiary hearing.

The petitioner, Walter Escobar, challenges his conviction and sentence, entered upon a plea of guilty in 2011 in the Twenty-Third Judicial District Court for the Parish of Ascension, State of Louisiana, on one count of driving while intoxicated (4th offense).  The petitioner asserts that he was provided with ineffective assistance of counsel in several respects and that his guilty plea was not knowing and voluntary.  Pursuant to a supplement to his application, the petitioner has further asserted a claim that the Bill of Information utilized to charge him for the referenced offense was deficient because it did not provide sufficient notice of the potential punishment for the offense.

Factual And Procedural Background

The record reflects that the petitioner's vehicle was pulled over on November 23, 2010, upon suspicion that he was operating the vehicle while intoxicated.  The report generated by the arresting officer reflects that the petitioner was observed to be driving erratically.  The petitioner exited the vehicle and, upon being asked to present his driver's license, exhibited a Mexican

passport.  The petitioner was noted to give off a strong odor of alcohol, to sway as he stood

before the officer, and to exhibit slurred speech and glassy blood-shot eyes.  The petitioner was

informed of his rights with the assistance of translation from the petitioner's roommate, and the

petitioner indicated that he understood his rights.  The petitioner then responded to questioning,

acknowledging that he was in the United States illegally and stating that he had drunk "four

beers" that evening.  The petitioner was given a field sobriety test, on which he performed

poorly, and was arrested on charges of operating a vehicle while intoxicated, operating a vehicle

without being lawfully present in the United States, and improper lane usage.  The petitioner was

thereafter charged, by a Bill of Information issued on January 7, 2011, with driving while

intoxicated (4th offense) and operating a vehicle without being lawfully present in the United

States.

Through appointed counsel, the petitioner subsequently filed pretrial motions, including

motions for a preliminary hearing and to suppress both the evidence of his arrest and the

statements made by him at the time thereof.  A preliminary hearing and a hearing on the motion

to suppress were thereafter conducted on April 25, 2011, at which the petitioner was represented

by counsel and provided with an interpreter.  The state court judge found that there was probable

cause for the charges and also denied the petitioner's motion to suppress.  A subsequent motion

to suppress was filed on the petitioner's behalf but was objected to as untimely and, on the date

of the hearing on that motion, August 22, 2011, the petitioner signified that he wished to change

his plea to guilty to the charge of operating a motor vehicle while intoxicated (4th offense).

On the date of the guilty plea, the petitioner, with the advice and assistance of his

attorney and with the assistance of an interpreter, executed a guilty plea form that explained the

panoply of protections and rights that the petitioner was relinquishing by pleading guilty,

including the presumption of innocence, the State's burden of proof beyond a reasonable doubt,

the right to a jury, the right to confront the witnesses against him, the right not to incriminate

himself, and the right to appeal.  The referenced form further advised the petitioner of the

elements of the offense to which he was pleading guilty and the potential penalties that he faced.

Specifically, the form provided:

> You are charged with a very serious crime, that of: DRIVING WHILE INTOXICATED – 4TH OFFENSE.  The elements of this crime are: THE OPERATION OF ANY MOTOR VEHICLE ... WHEN THE OPERATOR IS UNDER THE INFLUENCE OF ALCOHOLIC BEVERAGES, HAVING AT LEAST THREE CONVICTIONS FOR DRIVING WHILE INTOXICATED.  The range of penalties for this offense on a conviction of a fourth or subsequent offense, notwithstanding any other provision of LAW TO THE CONTRARY AND REGARDLESS OF WHETHER THE FOURTH OFFENSE OCCURRED BEFORE OR AFTER AN EARLIER CONVICTION, THE OFFENDER SHALL BE IMPRISONED WITH OR WITHOUT HARD LABOR FOR NOT LESS THAN TEN YEARS NOR MORE THAN THIRTY YEARS AND SHALL BE FINED FIVE THOUSAND DOLLARS.  SEVENTY-FIVE DAYS OF THE SENTENCE OF IMPRISONMENT SHALL BE IMPOSED WITHOUT BENEFIT OF PROBATION, PAROLE, OR SUSPENSION OF SENTENCE.  THE COURT, IN ITS DISCRETION, MAY SUSPEND ALL OR ANY PART OF THE REMAINDER OF THE SENTENCE OF IMPRISONMENT ....

The guilty plea form also provided specific information regarding the petitioner's three prior

convictions, specifically that he had "previously pled guilty to Operating a motor vehicle while

under the influence of alcoholic beverages on January 3, 2005 under Docket #08-04-0677 in East

Baton Rouge Parish, on July 31, 2005 under Docket #384523 in Ascension Parish, and on

August 18, 2009 under Docket #25137 in Ascension Parish."[1]

In addition to the foregoing, a guilty plea colloquy was conducted in open court on the

date of the plea, during which the petitioner was represented by his attorney and provided with

---

1.  Through hand-written notations on the guilty plea form, the date of the first conviction was changed from January 3 to January 13, 2005, and the docket number for that conviction was changed from #08-04-0677 to #05-04-0677.  In addition, the date of the second conviction was changed from July 31, 2005, to July 31, 2007.

the services of an interpreter.  The Court reiterated the rights that the petitioner was relinquishing by pleading guilty, and the Court assured itself that the petitioner's attorney had explained those rights to the petitioner (also through an interpreter) and that the petitioner had in fact been fully advised of his rights, understood the charge, and was entering the plea freely and voluntarily.  In addition, the petitioner's attorney assured the court that she had gone over the guilty plea form and the evidence with the petitioner on "numerous occasions" to explain what was going on and to make sure that he understood all the evidence.  Although there was some confusion during the colloquy regarding the dates of the three prior convictions, and although the petitioner made the conclusory assertion that he "was not guilty" on two of the prior occasions, the petitioner did not dispute, then or now, that he "paid the three tickets" in connection with the prior charges and that the three prior guilty plea convictions are in fact on his record.

At the conclusion of the referenced guilty plea colloquy, the petitioner and his attorney indicated to the court that they would waive the delays for sentencing, and the court imposed sentence at that time: ten (10) years in confinement, with the first two years thereof being without the benefit of probation, parole, or suspension of sentence, and a fine of $5,000.00, with credit for time served and with the sentence to run concurrently with the petitioner's sentence in connection with his 3rd offense DWI conviction.

The petitioner did not appeal his conviction or sentence.  However, approximately six months later, on or about February 20, 2012, the petitioner filed a Motion to Reconsider his Sentence, which motion was denied without reasons by the state trial court on February 27, 2012.  Shortly thereafter, on or about March 9, 2012, the petitioner filed an application for post-conviction relief in the state trial court, asserting that (1) the sentence was excessive, (2) the sentence was illegal, (3) his guilty plea was not knowing and voluntary, and (4) he had been

provided with ineffective assistance of counsel.  On May 8, 2012, the trial judge entered a

Ruling denying the petitioner's application, stating:

> The Court having reviewed the defendant's Application for Post-Conviction Relief, the State's answer, and supporting documents, including the transcript of the *Boykin* colloquy and the *Boykin* form in the entitled matter, [it] is clear that the Court's sentence is well within the range of penalties allowed under La. R.S. 14:98E and the defendant was advised of the range of penalties by the Court at the time his guilty plea was taken. The Court notes the defendant's admission to having pled guilty on three prior occasions, the certification by his attorney of record as evidence in the transcript of the *Boykin* colloquy, the defendant's waiver of all delays for sentencing and that he was ready for sentencing on the date of his plea.

Although the petitioner sought further supervisory review in the state appellate courts, both the

Louisiana Court of Appeal for the First Circuit and the Louisiana Supreme Court denied further

review without comment, on August 13, 2012, and January 25, 2013, respectively.  *See, e.g.,*

*State ex rel. Escobar v. State*, 105 So.3d 715 (La. 2013).

Finally, on or about March 3, 2013, the petitioner filed the instant application for habeas

corpus relief in this Court.

<u>Legal Analysis</u>

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d).  Pursuant to

that statute, an application for a writ of habeas corpus shall not be granted with respect to any

claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  Relief is authorized if a state court has arrived at a

conclusion contrary to that reached by the Supreme Court on a question of law or if the state court

has decided a case differently than the Supreme Court on a set of materially indistinguishable

facts.  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  Relief is also available if the state court has

identified the correct legal principle but has unreasonably applied that principle to the facts of the

petitioner's case or has reached a decision based on an unreasonable factual determination.  *See*

*Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  Mere error by the state court or mere

disagreement on the part of this Court with the state court determination is not enough; the

standard is one of objective reasonableness.  *Id.*  *See also Williams v. Taylor, supra*, 529 U.S. at

409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether

the state court's application of clearly established federal law was objectively unreasonable").

State court determinations of underlying factual issues are presumed to be correct, and the

petitioner has the burden to rebut that presumption with clear and convincing evidence.  28

U.S.C. § 2254(e)(1).

The Petitioner's Claim No. One, That He Was
<u>Denied Effective Assistance Of Counsel, Is Without Merit</u>

A habeas petitioner who contends that he was provided with ineffective assistance of

counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient," *i.e.*,

that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed

the defendant by the Sixth Amendment, and (2) that the deficient performance prejudiced his

defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial

in which the result is reliable.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The

petitioner must make both showings in order to obtain habeas relief based upon the alleged

ineffective assistance of his counsel.  *Id.*

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate

that his counsel's representation fell below an objective standard of reasonableness as measured

by prevailing professional standards.  *See, e.g., Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir.

6

1986).  The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy.  *See, e.g., Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988).  This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial.  *Martin v. McCotter, supra*, 796 F.2d at 817.  Great deference is afforded to counsel's exercise of professional judgment.  *Bridge v. Lynaugh, supra*, 838 F.2d at 773; *Martin v. McCotter, supra*, 796 F.2d at 816.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors.  *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988).  To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding.  *Strickland v. Washington, supra*, 466 U.S. at 693.  Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.  *Martin v. McCotter, supra*, 796 F.2d at 816.  The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome."  *Id.* at 816-17.  Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review by federal courts is "doubly deferential."  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

*A. Failure to Investigate or Verify the Validity of the Predicate Offenses.*

In his first assignment, the petitioner asserts that his attorney failed to investigate and determine the validity of the three predicate DWI offenses upon which his 4th offense DWI conviction was based.  The petitioner asserts that, had his attorney done so, she would have discovered that the information provided relative to the first predicate DWI conviction, *i.e.,* the East Baton Rouge Parish conviction entered in 2005, was deficient because "the docket number was incorrect" as listed in the Extract of the Criminal Minutes from the Baton Rouge court.  In addition, the petitioner asserts that this error was carried over and tainted the second predicate DWI conviction, *i.e.,* the 2007 Ascension Parish DWI conviction, because the Bill of Information in that case repeated the incorrect East Baton Rouge Parish docket number.  The petitioner asserts that had his attorney discovered these errors, she could have moved to quash the 4th offense Bill of Information and thereby decreased the penalty faced by the petitioner and reduced the offense from a felony to a misdemeanor.

The petitioner's contention is entirely without merit.  Whether the correct state court docket number was listed in the Bill of Information for the petitioner's 2005 East Baton Rouge DWI conviction is of no moment because the petitioner makes no assertion that he did not in fact plead guilty to driving while intoxicated in East Baton Rouge Parish in January, 2005.  To the contrary, the petitioner explicitly states in this case that he "is not contesting his 2005 conviction allegation."  *See* R. Doc. 10 at p. 4.  In addition, the record of this proceeding contains a certified true copy of the Extract from the Criminal Court Minutes of the Nineteenth Judicial District Court for the Parish of East Baton Rouge ("EBR"), which reflects that on January 13, 2005, the petitioner pleaded guilty to first offense DWI and was given a deferred sentence at that time.  The docket number provided in the referenced Extract relative to that conviction is No. 08-04-

0677, and that docket number was later utilized and repeated in the subsequent Bills of Information issued in 2007, 2009 and 2010 in Ascension Parish, charging the petitioner with his subsequent DWI violations.  It appears, however, that there was a typographical error in the EBR Extract, and the docket number apparently should have been No. 05-04-0677 instead of No. 08-04-0677.  This mere typographical error, however, does not impact upon the validity, in fact, of the 2005 EBR conviction, the existence of which the petitioner does not even dispute.  Accordingly, additional investigation relative to the referenced predicate EBR and Ascension Parish convictions would only have resulted in the discovery of an easily corrected typographical error in the recitation of the EBR docket number, which error does not affect the validity of the underlying proceedings or convictions.  Thus, a motion to quash the petitioner's 4th offense DWI Bill of Information on the basis of the incorrect EBR docket number would have been an exercise in futility and would have resulted in nothing more than an *instanter* amendment to the charging document to correct the referenced number.  It appears, in fact, that the number was later amended on the petitioner's 4th offense DWI Bill of Information and also on the petitioner's guilty plea form because there are handwritten notations on both to that effect.  *See* Exhibits "H" and "I" to the petitioner's Motion to Reconsider Sentence filed on February 20, 2012.  Inasmuch as a failure to undertake a futile act is not deficient performance on the part of an attorney, the petitioner's claim in this regard should be rejected.

   *B. Incorrect Advice Relative to the Petitioner's Mandatory Minimum Sentence.*

   The petitioner next complains that his attorney, and also the state court's guilty plea form, provided incorrect advice regarding parole eligibility in connection with the mandatory

minimum sentence for a 4th offense DWI conviction.[2]  Applying the *Strickland* standard, the

Court finds that, even assuming that the petitioner has overcome the "strong presumption" of

reasonable professional competence and the "great deference" that is generally afforded to the

exercise of an attorney's professional judgment, the petitioner has failed to make a sufficient

showing of prejudice resulting from his attorney's conduct, *i.e.,* a showing that but for counsel's

alleged error, the result of the proceeding would have been different.

At the time of the petitioner's conviction and at the time of commission of the offense,

La. R.S. 14:98(E)(1)(a) provided that, upon conviction for 4th offense DWI, the petitioner faced a

sentence of imprisonment of not less than ten years and not more than thirty years, together with

a fine in the amount of $5,000.00.  The statute further provided that the first two years of the

sentence "shall be imposed without benefit of parole, probation or suspension of sentence," and

that the court, in its discretion, could "suspend all or any part of the remainder of the sentence of

imprisonment."  The petitioner complains that whereas he was correctly informed that he faced a

sentence of imprisonment of "not less than ten years nor more than thirty years," his attorney

allegedly incorrectly advised him, as did the guilty plea form, that only "seventy-five days of the

sentence of imprisonment" – in contrast to two years as provided in the statute – were to be

---

2.  The petitioner also asserts that the state trial court failed to fulfill its obligations under *Boykin v. Alabama*, 395 U.S. 238 (1969), and instead allowed the petitioner's attorney to admonish the petitioner regarding the rights that he was relinquishing by pleading guilty and the potential punishment that he faced in connection with the offense charged.  However, the record reflects that the state trial judge, in open court, also reviewed the petitioner's charge and pertinent constitutional rights during the guilty plea colloquy and assured himself that the petitioner understood, had been informed of, and was aware of same.  In addition, courts that have addressed this issue have found no deficiency in the use of a guilty plea waiver form.  *See, e.g., Plaisance v. Louisiana Department of Corrections*, 2007 WL 3046197, *3 (E.D. La. Oct. 15, 2007) (referring to the petitioner's signed waiver of rights forms and noting that "[o]fficial state court records like the waiver of rights forms are entitled to a presumption of regularity and are accorded great weight in a federal habeas proceeding").

imposed without the benefit of probation, parole, or suspension of sentence.[3]  The petitioner

asserts that this failure on the part of his attorney court to provide the correct information

constituted deficient performance that entitles him to relief in this case.

The requirement of showing both deficient performance and resulting prejudice under

*Strickland* is equally applicable in the context of a guilty plea.  *See Hill v. Lockhart*, 474 U.S. 52,

57-58 (1985).  In such context, establishing *Strickland's* prejudice requirement turns on "whether

counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Id.*

at 59.  This means that, "in a guilty plea scenario, a petitioner must prove not only that his

attorney actually erred, but also that he would not have pled guilty but for the error" and instead

"would have insisted upon going to trial."  *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

The petitioner bears the burden of proof when asserting a claim for ineffective assistance of

counsel.  *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993).

In the context of a guilty plea, it has been found that it is not necessary for the

petitioner's attorney to affirmatively undertake to advise a criminal defendant regarding his

eligibility for parole consideration.  *See Hill v. Lockhart, supra,* 474 U.S. at 57 ("We have never

held that the United States Constitution requires the State to furnish a defendant with information

about parole eligibility in order for the defendant's plea of guilty to be voluntary").  A different

question is presented, however, when advice regarding parole eligibility has in fact been

provided, and the advice is alleged to be incorrect.  When presented with a similar question in

*Hill v. Lockhart,* the Supreme Court declined to resolve the issue, stating "[w]e find it

unnecessary to determine whether there may be circumstances under which erroneous advice by

---

3.  It appears that the Louisiana DWI statute, La. R.S. 14:98, was amended, effective
June 30, 2010, to increase – from 75 days to two years – the part of a sentence for a 4th offense
DWI conviction that was not subject to probation, parole or suspension of sentence.

counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel."
474 U.S. at 60.   Thus, as recently noted in *Hunnicutt v. Thaler*, 2013 WL 2367772, *7 (N.D.
Tex. May 30, 2013), wherein the Court rejected an inmate's claim that he had pleaded guilty
based upon incorrect advice from his attorney regarding parole eligibility, "neither the Supreme
Court nor the Fifth Circuit has held that a counsel's failure to correctly advise a defendant
regarding parole eligibility amounts to ineffective assistance of counsel." *Cf., Pappas v. Prince*,
2013 WL 5701659, *8 (E.D. La. Oct. 18, 2013) (concluding without discussion that
misinformation regarding eligibility for early release "amounted to a constitutionally defective
performance," but denying habeas relief because the petitioner could not show prejudice);
*Gatewood v. Quarterman*, 2006 WL 3340957, *7 (W.D. Tex. Nov. 15, 2006) (same relative to
misinformation regarding a mandatory period of confinement without parole).[4]   At most, the
Fifth Circuit has stated that advice regarding parole that is "affirmatively erroneous," in contrast
to a mere failure to provide advice, is "more objectively unreasonable" in the context of a guilty
plea. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995).   Consequently, it is unclear whether the
petitioner's claim regarding misinformation regarding the extent of his eligibility for parole
presents a viable claim for habeas corpus review.

Notwithstanding the foregoing question, in order to show ineffective assistance of
counsel based on alleged mis-advice regarding parole eligibility, the petitioner would be
required, in any event, to show not only that the mis-advice fell below an objective standard of
reasonableness but also that there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been different. *Czere v. Butler*,

---

4.   The Magistrate Judge's Report and Recommendation was accepted by the District
Judge. *Gatewood v. Quarterman*, 1:05-cv-1057-55, R. Doc. 32 (W.D. Tex. Jan 29, 2007).

833 F.2d 59, 63 (5th Cir. 1987).  In the context of a guilty plea, this Court will not presume prejudice, *Childress v. Johnson*, 103 F.3d 1221, 1229 (5th Cir. 1997), and the petitioner must affirmatively establish prejudice, regardless of how plausible a showing of prejudice might otherwise be.  *Czere v. Butler, supra*, 833 F.2d at 64.  To determine whether parole eligibility was important to the petitioner in this context, a habeas court may consider (1) if and when the petitioner asked about parole or for an explanation of the parole term, and (2) whether parole was only a fringe concern at the time the petitioner entered his plea.  *Id.* at 63-64.  Where, as here, the state court has adjudicated the petitioner's ineffective assistance claims on the merits, this Court must review the petitioner's claims under the "doubly deferential" standard of both *Strickland* and Section 2254(d).  *Cullen v. Pinholster*, 563 U.S. 170, (2011).  In such instance, the "pivotal question" for the Court is "whether the state court's application of the *Strickland* standard was unreasonable."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

    As discussed hereafter, the Court finds that the petitioner has failed to meet his burden of proof and establish that he suffered actual prejudice as a result of the referenced misinformation regarding parole eligibility.  Specifically, there is no suggestion in the record that parole eligibility had any bearing upon the petitioner's decision to plead guilty to the referenced charge.  Whereas the petitioner seeks to characterize his claim as being that he was not informed about his "minimum sentence exposure," the record reflects that he was clearly advised, in accordance with the statute, that he faced a mandatory minimum sentence of at least ten years and potentially faced a sentence of up to thirty years in confinement.  The record further reflects that the petitioner in fact obtained substantial benefit from the guilty plea through the imposition of the minimum sentence.  The petitioner does not assert that he had a viable defense to the DWI charge levied against him and, as a result of his plea, (1) the State agreed to *nolle prosse* the

13

pending charge of operating a vehicle while illegally in the United States, and (2) the petitioner avoided an 18-year sentence that his attorney explicitly advised him would be imposed if he did not plead guilty and "*accept* a 10-year sentence."  *See* R. Doc. 1-1 at p. 2.  The petitioner's acknowledgment regarding his option to "accept" a 10-year sentence suggests that he was advised that by pleading guilty, he would receive the mandatory minimum sentence instead of the higher 18-year sentence that his attorney advised would be imposed after a trial and conviction.  This conclusion is further supported by the petitioner's waiver of all delays prior to sentencing and also by a statement made by the trial judge at the conclusion of the guilty plea colloquy that the judge "accept[ed] the plea *and the plea bargain*" and was ready to impose sentence.  (Emphasis added).  The petitioner's awareness that, in the absence of a plea, he would likely face a sentence of 18 years in confinement belies any suggestion that he anticipated or had reason to expect earlier parole consideration or a partial suspension of his sentence.  This is particularly true in light of his admitted illegal immigration status, which status was noted by the sentencing judge in imposing sentence.  The petitioner's contentions are further belied by the fact that the petitioner did not pursue an appeal of his conviction or sentence or make any assertion regarding alleged deficiencies in the plea process until almost six months after the imposition of sentence when he filed a Motion to Reconsider the Sentence.  In that motion, although the petitioner asserted a claim regarding the misleading assertion that he would be eligible for parole consideration in 75 days, he did not seek abrogation of the plea on this basis but rather sought a new sentence allowed under the statute, *i.e.,* a discretionary suspension of eight years of the mandatory minimum10-year sentence and release with parole supervision after serving two years thereof.

Based on the foregoing, the petitioner has failed to show, to any reasonable degree of

14

probability, that he would not have pleaded guilty and would have insisted upon going to trial but for the alleged erroneous advice regarding parole eligibility.  In fact, the Court notes that the petitioner's application is somewhat ambiguous relative to this last pivotal issue.  Specifically, the petitioner states in his pleadings only that "[h]ad he been aware of the inaccurate information *in his predicate offenses*, he would have elected to have the trial court determine his prior offender status," *see* R. Doc. 1-1 at p. 12 (emphasis added). *See also* R. Doc. 10 at p. 7 ("Escobar avers had counsle [sic] advised him concerning actual consequences of his guity [sic] plea, in conjunction concerning *invalid predicate records* he would not have entered plea and requested trial" (emphasis added)).  He does not clearly make this assertion in connection with the alleged misinformation relative to parole eligibility. *See Davis v. United States*, 335 Fed. Appx. 825, 827 (11th Cir. 2009) (concluding that, "[i]f the movant (1) failed to allege in his motion to vacate that, but for counsel's advice, he would not have pled as he did or (2) otherwise failed to show special circumstances indicating that counsel's advice affected his decision to plead, then his allegation of prejudice is insufficient to satisfy *Strickland*").  Considering that prejudice is never presumed and that the petitioner bears the burden of establishing prejudice in all cases, even when a finding of prejudice is otherwise plausible, the Court finds that the petitioner has not clearly and unequivocally shown that he would not have pleaded guilty but for the erroneous advice regarding parole eligibility.   For this reason, the Court finds that the petitioner has failed to carry his burden in connection with his claim of ineffective assistance of counsel, and the Court finds no error in the conclusion of the state court that there was no prejudice resulting from the inaccurate advice regarding parole consideration.[5] *See Hartshorn v.*

_____

5. The petitioner's memorandum includes an assertion that his guilty plea waiver form made reference to the imposition of his sentence after the preparation of a pre-sentence investigation report whereas such a report was not undertaken.  The record reflects, however,

*Prince*, 2012 WL 3860469, *9 (E.D. La. July 30, 2012) (finding that the petitioner failed to adequately show prejudice resulting from alleged misinformation as to the possibility of earlier release and that it was "not reasonably probable" that he would have rejected the plea agreement that resulted in a 10-year minimum sentence when he faced a ten-to-forty year sentence if convicted); *Gatewood v. Quarterman*, 2006 WL 3340957, *7-8 (W.D. Tex. Nov. 15, 2006) (finding no prejudice notwithstanding that the petitioner was misinformed regarding a minimum 5-year period of confinement without parole eligibility, noting the strength of the state's case, the absence of a viable defense, and the likelihood that the petitioner's sentence was "significantly less time" than he "would have received without a plea agreement").  *See also Pappas v. Prince*, 2013 WL 5701659, *8-9 (E.D. La. Oct. 18, 2013) (finding no prejudice notwithstanding that the petitioner was misinformed about his entitlement to good time); *Johnson v. Cain*, 2003 WL 21406177, *7-8 (E.D. La. June 13, 2003) (same).

The Petitioner's Claim No. Two, That His
Guilty Plea Was Not Knowing And Voluntary, Is Without Merit

The petitioner also asserts that his guilty plea was not knowing and voluntary for the same reasons as those asserted in connection with the previous claim, *i.e.,* that he did not validly consent to enter into the plea because he was not fully informed regarding the validity of the underlying predicate DWI convictions or regarding the extent of his exposure relative to parole eligibility.  In this regard, as a general proposition, the voluntariness of a guilty plea is not abridged by any misunderstanding or unfamiliarity with the collateral consequences of a plea. Further, the United States Constitution does not "require[] the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary."

---

that the petitioner and his attorney waived any delays for sentencing after the entry of the plea, thereby relinquishing any entitlement to the preparation of a pre-sentence investigation report.

*Czere v. Butler, supra*, 833 at 63.  Moreover, a petitioner can voluntarily enter a guilty plea whether or not he has been informed of the "collateral" consequences of his plea.  *United States v. Edwards*, 911 F.2d 1031, 1035 (5th Cir. 1990), and the Fifth Circuit has found that parole eligibility is a collateral consequence about which a criminal defendant need not be informed.  *Trujillo v. United States*, 377 F.2d 266, 269 (5th Cir. 1967).  A court generally considers a petitioner to be fully aware of the consequences of his plea when he understands the length of the sentence that he might possibly receive.  *Spinelli v. Collins*, 992 F.2d 559, 561 (5th Cir. 1993).

For the reasons expressed above, the Court finds that the petitioner's claim in this regard must be rejected.  Specifically, essentially the same analysis applies, and as stated by the Fifth Circuit when presented with a similar challenge to the voluntariness of a plea:

> [Petitioner] also makes a direct attack on his guilty plea, arguing that it was tendered upon a material mistake of fact and thus was not intelligent or voluntary on that ground as well.  The Supreme Court has instructed that, if a defendant enters a guilty plea on advice of counsel, the voluntariness of the plea turns on whether the advice "was within the range of competence demanded of attorneys in criminal cases."  *Hill v. Lockhart*, [*supra*].  Thus, [petitioner's] habeas petition depends on ineffective assistance of counsel analysis, which subsumes the claim of involuntariness.  *Id.; see Strickland v. Washington* [*supra*].

*Thomas v. Whitley*, 26 F.3d 1118, *2 n. 8 (5th Cir. 1994) (citations omitted).  Having concluded that the availability of parole in the instant case has not been shown to have been of more than insignificant importance in the petitioner's determination to enter a guilty plea, the Court is unable to conclude that the petitioner's plea was involuntary by reason of the alleged misinformation regarding same.

The Petitioner's Supplemental Claim No. Three, That The
<u>Bill Of Information Was Constitutionally Deficient, Is Without Merit</u>

The Court further finds that the petitioner's claims regarding the sufficiency of the Bill of

Information is without merit.  In this regard, the petitioner contends that whereas the charging document was clear that he was charged with "fourth offense" driving while intoxicated under La. R.S. 14:98, he asserts that the referenced statute had three (3) provisions regarding potential penalties and that the charging document was therefore constitutionally deficient because it failed to make clear under which provision the petitioner was charged.  The petitioner is mistaken in this regard.  The three provisions to which the petitioner refers did not alter the nature or length of the sentence that could be imposed for a fourth or subsequent DWI conviction, *i.e.,* a sentence of between ten and thirty years in confinement.   Instead the three referenced provisions addressed only the part of the sentence that could potentially be subject to probation, parole or suspension of sentence, and the discretion of the trial court to suspend all or part of the remainder.  Thus, whereas La. R.S. 14:98E(1)(a) provided that, in most instances, the first two years of a DWI-4th sentence would not be subject to probation, parole or suspension of sentence, 14:98E(4)(a) provided that this period would be lengthened to three years if the petitioner had previously been required to participate in a substance abuse program and/or home incarceration, and 14:98E(4)(b) provided that *no* part of the sentence would be subject to probation, parole or suspension of sentence if the offender had previously obtained such benefit in connection with a prior 4th offense DWI conviction.  These provisions do not alter the substance of the penalty faced under the statute, and inasmuch as probation, parole and suspension of sentence are seen to be collateral aspects of a sentence of conviction, it was not necessary for the petitioner's Bill of Information to specifically designate which subsection of La. R.S. 14:98E he might be sentenced under.

The law is well-settled that a state indictment or bill of information is not a matter for federal habeas corpus relief unless the charging document was so defective that the convicting

court had no jurisdiction and that, under no circumstances, could a valid state conviction result from the facts provable thereunder.  *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).  Such a determination is made by looking to the law of the state where the bill of information was issued.  *Id.*  In this regard, the Louisiana Code of Criminal Procedure provides that "[t]he indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged ... [and] shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated."  La. Code Crim. P. art. 464.  Further, a bill of particulars may be requested by either the defendant or by the trial court so as to provide "more specifically the nature and cause of the charge."  La. Code Crim. P. art. 484.    In the instant case, the petitioner's Bill of Information made reference to the date and place of the charged offense and the statute that the petitioner was charged with having violated, *i.e.*, "La. RS 14:98 – 4TH."  The Bill of Information further stated that the petitioner was charged with "operating a motor vehicle while under the influence of alcoholic beverages" on November 23, 2010, that "this is a FOURTH offense," and that the petitioner had previously pled guilty, on three prior occasions, to similar offices, with pertinent details regarding the predicate offenses.  The referenced statute, as written at the time of the petitioner's offense, was clear that a 4th offense conviction under the statute carried with it a sentence of between 10 and 30 years in confinement.  *See* La. R.S. 14:98E(1)(a).  Accordingly, this Court finds that there was no surprise or lack of notice as to the nature of the offense charged.  Moreover, neither state nor federal law requires that a charging document set forth the range of penalties to which a criminal defendant is exposed for the offense charged.  Finally, any challenge to the Bill of Information by the petitioner's attorney would have resulted, at most, in an amendment to the charging document so as to provide further clarification, thereby achieving, if anything, a mere

delay in the trial and resulting in no prejudice in fact to the petitioner.  *See State v. James, supra,* 305 So.2d at 518 (noting that an objection prior to trial or at trial could have secured an amendment to the charging document).  *See also Tarver v. Cain, 2007 WL 677171,* *10 (W.D. La. Feb. 2, 2007) (finding no prejudice resulting from an attorney's failure to challenge an indictment because the prosecution simply could have "amended the indictments to cure any alleged defects").  Accordingly, this claim should be rejected as well.

Certificate Of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although the petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In the instant case, the Court finds that reasonable jurists would not debate the denial of the petitioner's § 2254 application or the correctness of the substantive ruling.  Accordingly, it is appropriate that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

20

## RECOMMENDATION

It is recommended that the petitioner's application for habeas corpus relief be dismissed, with prejudice, as being without merit.  It is further recommended that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on March 2, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

21

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**WALTER ESCOBAR (#589062)**                                     **CIVIL ACTION**

**VERSUS**

**PAUL HALL, WARDEN**                                            **NO. 13-0143-SDD-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 2, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**